```
  UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
AMSAL KEBEDE,                                          :
                                                       :
            Pro se Plaintiff,                          :          **MEMORANDUM & ORDER**
                                                       :
            -against-                                  :          02-CV-3315 (DLI)
                                                       :
LARRY JOHNSON,                                         :
                                                       :
                        Defendant.                     :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* plaintiff, Amsal Kebede, brings this action against defendants, New Look Enterprises, Inc. and Julio Maldonado, asserting fraud, fraud in the inducement, conspiracy to commit fraud, and breach of covenant of fair dealing and good faith.[1] Plaintiff further asserts claims of malpractice and conspiracy to commit fraud against defendant, Larry Johnson. Defendant Johnson now moves for summary judgment dismissing plaintiff's fraud and malpractice claims. For the following reasons, defendant's motion is granted in its entirety.

**Facts**

Construed in the light most favorable to plaintiff, the facts, which are largely undisputed, are as follows:

On January 10, 2002, Plaintiff, an experienced businessman, entered into a "Purchase and Sales Agreement" ("Purchase Agreement") for the purchase of a business located at 175 Targee Street, Staten Island, New York, (the "Business") from Seller/Defendant, New Look Enterprises, Inc. ("New Look"). The Business consists of a convenience store, gas station, and carwash.

---

[1] This action was referred to arbitration by the Hon. Raymond J. Dearie on September 30, 2002. An award was made by the arbitrator on April 10, 2003. Plaintiff subsequently requested a trial *de novo* as to defendant Larry Johnson only.

Plaintiff retained Defendant Johnson to represent him in the purchase of the Business. Johnson is an attorney admitted to practice law in New York state. (Johnson Aff. at ¶ 5.) Johnson opened his own law office in June 2001, after spending two years in the corporate department of the law firm of Akin Gump Strauss Hauer Feld LLP, working on "private equity transactions and due diligence searches for major mergers and acquisitions." (*Id.*)

In December 2001, plaintiff learned of the Business sale through a newspaper advertisement and contacted New Look's broker, Julio Maldonado ("Maldonado"). (*See* Pl.'s Aff. at 1-2.) Shortly thereafter, plaintiff was furnished with a "Business Profile," met the principals of New Look, and visited the Business location on six separate occasions prior to closing. (*See* Pl.'s Aff. at 2; Pl.'s Dep. at 60-63.)

During plaintiff's visits to the Business location, he observed the number of patrons frequenting all three parts of the Business. (*See* Pl.'s Dep. at 63.) Specifically, plaintiff observed the number of gallons of gasoline delivered to the Business and inspected the bills of lading reflecting the costs associated with the deliveries. (*See* Pl.'s Dep. at 76-77; Macchia Dep. at 10-11.) To determine the Business' "sales volumes and profits[,]" plaintiff consulted New Look's Business Profile because New Look did not possess any sales volume records. (Pl.'s Dep. at 77-78; Mahfooz Dep. at 28, 33.)

After much negotiation, plaintiff and New Look's principals agreed on a purchase price of $200,000.00. (Pl.'s Opp at 2; Pl.'s Dep. at 88.) Plaintiff was then referred to Johnson whom he retained to represent him in the purchase of the Business. (Pl.'s Aff. at 2.) Johnson also represented New Look in the transaction. (Pl.'s Dep. at 99.) Both Plaintiff and New Look signed individual retainer agreements acknowledging and consenting to Johnson's dual representation. (*See* Brownell

Aff. Ex. "O" & "P;" Pl.'s's Dep. at 99-101.)  The relevant portion of plaintiff's retainer agreement reads: "You acknowledge and consent to my representing both you and New Look Enterprises, Inc., the Seller of the above mentioned properties."  (Brownell Aff. Ex. O.)

During Johnson's representation of plaintiff, Johnson reviewed and explained to plaintiff the terms of the Purchase Agreement and promissory note between plaintiff and New Look.  (*See* Pl.'s Dep. at 34-35, 40.)  Plaintiff testified that he read and understood the terms of the Purchase Agreement and promissory note.  (*See* Pl.'s Dep. at 34-35, 39-40.)  Johnson provided plaintiff with a due diligence checklist, outlining the areas of investigation necessary to adequately inform a buyer of the nature of a business being purchased.  (*See* Johnson Aff. at ¶ 9; Brownell Aff. Ex. Q.)  Johnson further discussed the contents of the checklist with plaintiff, including the need to search for records.  (*See* Johnson Aff. at ¶ 9; Pl.'s Dep. at 39.)  Johnson conducted an environmental violation search and contacted the landlord and gas supplier for the Business and negotiated a new lease and gas supply agreement.  (*See* Johnson Aff. at ¶¶ 16-17.)  He also explained to plaintiff the contents and provisions of plaintiff's new lease.  (Pl.'s Dep. at 72.)  Finally, Johnson attempted to obtain business and tax records and was told that none existed because the sellers were in operation for less than a year.  (*See* Johnson Aff. at ¶ 15).  Johnson continued representing plaintiff until the closing on January 10, 2002.

On February 10, 2002, plaintiff defaulted on the first payment of the promissory note between plaintiff and New Look.  (*See* Pl.'s Dep. at 40-42.)  Plaintiff ultimately defaulted on the entire promissory note.  (*See* Pl.'s Dep. at 40.)  In addition, he failed to pay for the remaining inventory as agreed to in the Purchase Agreement.  (*See* Pl.'s Dep. at 102.)  Although plaintiff contends that he was delinquent in his payments due to the Business' net loss, the record reveals that

plaintiff had sufficient funds to pay off the note and remaining inventory. In March 2002, plaintiff was approved for a loan in the amount of $680,000. (*See* Pl.'s Dep. at 46.) Moreover, one of plaintiff's employees, Raja Mahfooz, who delivered the Business' daily books and cash receipts to plaintiff, testified that the car wash was profitable. (*See* Pl.'s Dep. at 122; Mahfooz Dep. at 63, 67.) Finally, upon reviewing plaintiff's books, Johnson's expert, Arthur C. Cohen[2] calculated an average monthly profit of $8,314.00[3] and an annual projected net profit of approximately $99,768.[4]

In June 2002, plaintiff filed the instant malpractice action against Johnson for "[f]ailing to suggest or counsel the Plaintiff in conducting a [sic] due diligence prior to purchasing the business. . . . Failing to determine if any environmental liability exists . . . . Failing to do a UCC and tax search against the Seller to determine financial status . . . [and] permitting the Plaintiff to close the transaction without any solution in the event of the purchaser's inability to secure financing." (Compl. at ¶ 46.) Plaintiff also alleges conspiracy to commit fraud against Johnson, New Look and principals of New Look. In September 2002, defendant Johnson joined issue. After an attempt at arbitration, (*see* fn. 1), and conducting some discovery, Johnson filed the instant motion for

---

[2] Mr. Arthur C. Cohen, MBA, MAI, ASA, a graduate of University of Wisconsin and Columbia University, is a licensed General Real Estate Appraiser. Mr. Cohen is also an adjunct assistant professor of Real Estate Valuation at Baruch School, City University of New York. For the past thirty years, Mr. Cohen has been the principal of Arthur Charles Cohen, Inc., an independent real estate appraisal and business evaluation consulting firm. (Cohen Aff. at ¶ 1.)

[3] "Based on the records created by Plaintiff and turned over to Larry Johnson's attorneys, Plaintiff's actual average net profit for each month while he operated the business was more than $8,000 a month ($8,314)." (Cohen Aff. at ¶ 16.)

[4] "[I]n order to calculate the figures I first used the gross revenues actually received by Plaintiff, averaged and projected over a year. I then subtracted the total costs of goods sold, which is based on the cost of goods actually sold by Plaintiff, averaged and projected over a year . . . to arrive at the gross margin figure. I then subtracted the expenses . . . from the gross margin . . . to obtain the net annual profit projected ro Plaintiff's business. (Cohen Aff. at ¶ 15.)

summary judgment dismissing plaintiff's malpractice and conspiracy claims.

## Discussion

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c). The court must view all facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-89, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). In drawing inferences in favor of the non-moving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations conjecture, and speculation... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 394, 404 (2d Cir. 1998). The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.

Because plaintiff is a *pro se* litigant, the court, in deciding this motion, has construed plaintiff's papers broadly, interpreting them to raise the strongest arguments they suggest. *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1993).

**II.    Legal Malpractice Claim**

Under New York law, the three elements of a legal malpractice claim are: (1) duty, (2)

breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty. *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 117 (2d Cir. 2002) (quoting *Tinelli v. Redl*, 199 F.3d 603, 606 (2d Cir. 1999)). Here, it is not disputed by the parties that Johnson, as plaintiff's counsel, owed him a duty of care. Therefore, to succeed on his claim of legal malpractice, plaintiff must establish that Johnson breached this duty, and that said breach was the proximate cause of some actual injury to plaintiff.

The second element requires a showing that the defendant "failed to exercise the degree of care, skill and diligence commonly possessed and exercised by an ordinary member of the legal community." *Kranis v. Scott*, 178 F. Supp. 2d 300, 334 (E.D.N.Y. 2002) (quoting *Logalbo v. Plishkin, Rubano & Baum*, 163 A.D.2d 511, 558 N.Y.S.2d 185, 187 (2d Dep't 1990)). Generally, "such showing in the summary judgment context requires expert opinion evidence." *Nobile v. Schwartz*, 265 F. Supp. 2d 282, 288 (S.D.N.Y. 2003). However, the requirement may be dispensed with where "ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service." *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo*, 259 A.D.2d 282, 686 N.Y.S.2d 404, 405-06 (1st Dep't 1999); *see also Sallam v. Nolan*, 116 F.3d 466, 1997 WL 311607, at *2 (2d Cir. 1997) ("Unless a juror's ordinary experience provides sufficient basis to assess the adequacy of the professional service, or the attorney's conduct falls below any standard of due care, expert testimony is necessary to establish the attorney acted negligently"); *Clanton v. Vagianellis*, 192 A.D.2d 943, 596 N.Y.S.2d 593, 595 (3d Dep't 1993) (holding that in order to succeed on a legal malpractice case, plaintiff must submit an expert opinion attesting to the standard of professional care and skill that defendant allegedly failed to meet).

Here, plaintiff has not provided any expert affidavit in support of his malpractice claim or

in opposition to Johnson's motion. Plaintiff also failed to provide any argument as to why a fact finder of ordinary experience would be sufficient to judge the adequacy of the professional service. Nonetheless, the alleged conduct is not such that a fact-finder would need expert assistance in determining whether Johnson breached the applicable standard of care. To the contrary, Johnson provided plaintiff with a due diligence checklist, conducted an environmental violation search, attempted to obtain business and tax records, obtained business certificates and certificates of authority; contacted the attorney for the landlord and gas supplier and negotiated a new lease and gas supply agreement. *See* Johnson Aff. at ¶¶ 9-12, 15-17. Moreover, plaintiff testified that Johnson explained the contents of the Purchase Agreement, Lease and Promissory Note to plaintiff and that plaintiff read and understood the contents of the Purchase Agreement and Promissory Note. *See* Pl.'s Dep. at 34, 39-40. Thus, plaintiff failed to establish that the Defendants breached the applicable standard of care.

The third element requires plaintiff to show that, but for the defendant's negligence, he would have prevailed in the underlying action or would not have sustained any damages. *Davis v. Klein*, 88 N.Y.2d 1008, 1009-10, 648 N.Y.S.2d 871, 671 N.E.2d 1268 (1996); *Ashton v. Scotman*, 260 A.D.2d 332, 686 N.Y.S.2d 322 (2d Dep't 1999). Plaintiff contends that he suffered a total of $229,308.26 in losses from the Business. However, plaintiff has not established any actual loss from the Business. Plaintiff merely provides a laundry list of purported loss figures, which, without more, do not create a genuine issue of fact. *See Luniewski v. Zeitlin*, 188 A.D.2d 642, 591 N.Y.S.2d 524, 526 (2d Dep't. 1992) (finding mere speculation of loss resulting from an attorney's alleged omissions insufficient to sustain prima facie case sounding in legal malpractice). Based on an analysis of plaintiff's financial records, Johnson's expert concluded that plaintiff actually generated a monthly

profit of over $8,000.00. Thus, plaintiff did not sustain an actual loss, but rather profited from the Business.

Finally, without establishing actual loss or a beach of duty on the part of Johnson, plaintiff cannot establish causation. Therefore, no reasonable jury can find that Johnson was negligent in his representation of plaintiff.

**III.    Conspiracy to Commit Fraud**

Plaintiff also claims that Johnson engaged in a conspiracy to commit fraud upon plaintiff. New York does not recognize civil conspiracy as an independent tort. *See Alexander & Alexander v. Fritzen*, 68 N.Y.2d 968, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1996). However, a claim of conspiracy may rest upon an independent underlying fraud claim. *See Drake v. Laboratory Corp. of America Holdings*, 290 F. Supp. 2d 352, 374 (E.D.N.Y. 2003). To establish a fraud, a plaintiff must show representation of a material existing fact, falsity, scienter, deception and injury. *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999).

Plaintiff has not provided any evidence to create a genuine issue of fact as to any element of plaintiff's fraud claim. Plaintiff merely makes bald conclusory allegations that Johnson is "guilty of violating the code of professional responsibility," "is guilty of a conflict of interest which precluded him from devoting his undivided loyalty to [plaintiff]," "did not have the free capacity to warn [plaintiff] the risks of the transaction because of his concurrent obligation for loyalty to both the seller New Look and Broker," and lacked "professional skill or by reason of his wanton, reckless and negligent conduct is guilty of malpractice." These conclusory and speculative comments are not enough to raise genuine issues of material fact to preclude entry of summary judgment. *See In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 424-25 (S.D.N.Y. 1990); *Martin-Trigona v. Brooks*

*& Holtzman*, 551 F.Supp. 1378, 1383 (D.C.N.Y. 1982) (finding conclusory allegations that defendants participated in a conspiracy to commit fraud insufficient to survive summary judgment). Thus, there is insufficient evidence upon which a reasonable jury could return a verdict in plaintiff's favor.

## **Conclusion**

For the reasons set forth above, defendant's motion for summary judgment is granted in its entirety. The complaint is dismissed without costs to either party.

SO ORDERED

DATED: Brooklyn, New York
September 8, 2006

/s/
DORA L. IRIZARRY
United States District Judge